UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

MARK HAMMING and MARGARET
HAMMING,

        Debtors.

_____/

Case No. DG 21-01475
Hon. Scott W. Dales
Chapter 13

MARK HAMMING and MARGARET
HAMMING,

        Plaintiffs,

v.

ASSET MANAGEMENT HOLDINGS, LLC,
AVAIL HOLDING, LLC, ASSET
MANAGEMENT HOLDINGS II, LLC, and
BLB TRADING, LLC,

        Defendants.

_____/

Adversary Pro. No. 21-80082

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                Chief United States Bankruptcy Judge

Defendants, Asset Management Holdings, LLC, Asset Management Holdings II, LLC,

Avail Holding, LLC, and BLB Trading, LLC (collectively referred to as "Defendants") filed their

Motion to Dismiss First Amended Complaint Seeking Damages in a Core Adversary Proceeding

(the "Rule 56 Motion," ECF No. 19).  They also filed Defendants' Motion for Protective Order (the

"Rule 26(c) Motion," ECF No. 18).  Plaintiffs and chapter 13 debtors Mark and Margaret Hamming

(the "Plaintiffs") timely filed opposition to both motions, and the court considered the motions and

the responses at a hearing on February 24, 2022, in Grand Rapids, Michigan, at which time all

parties appeared through counsel.  For the following reasons, the court will grant the Rule 56 Motion, and deny the Rule 26(c) Motion as moot in view of the dismissal.

## JURISDICTION

All parties have agreed, and the court concludes, that it may exercise the jurisdiction bestowed under 28 U.S.C. § 1334, and that this matter is comprised mainly of "core proceedings" within the meaning of 28 U.S.C. § 157(b)(2)(B) and (O), affecting the Defendants' claim against the property of the estate.  To the extent the Plaintiffs seek affirmative relief against the Defendants under non-bankruptcy law in matters that would not fall within the bankruptcy court's core authority, all parties have consented to this court's entry of a final judgment.  *See* First Amended Complaint Seeking Damages in a Core Adversary Proceeding (ECF No. 15, the "Amended Complaint") at ¶ 5; Rule 56 Motion at p. 2.

## BACKGROUND

The Plaintiffs bought their home in 2003 and refinanced it in 2005, taking out two mortgage loans of which only the second is at issue here.  At the inception of the 2005 loan transaction, FMF Capital LLC held the note (the "Note") secured by a second mortgage (the "Second Mortgage").  *See* Amended Complaint, at Exh. A (the Note); Rule 56 Motion at Exh. 2 (the Second Mortgage). Mr. Hamming alone signed the Note as borrower, but he and his wife both signed the Second Mortgage, which named the Mortgage Electronic Registration System, Inc. ("MERS") as the nominee for FMF Capital LLC and its successors, as mortgagee.  Unlike the Note, the Second Mortgage identifies both Plaintiffs as the "Borrower" and each Borrower covenanted to pay the indebtedness represented by the Note.

By the time the Plaintiffs filed their first chapter 13 bankruptcy petition in 2011 (Case No. 11-04638), an entity known as Popular ABS, Inc., appeared to hold the Note and Second Mortgage by way of assignment. Amended Complaint at ¶ 30. In their chapter 13 plan in that case, without any participation or opposition from Popular ABS, Inc., the Plaintiffs attempted to "strip off" the Second Mortgage as completely underwater (*i.e.*, without value in their home to support the mortgage), but they ultimately failed to complete their plan and converted their case to chapter 7. In the chapter 7 phase of that case, the court entered a discharge, relieving the Plaintiffs of *in personam* liability, including under the Note. *Id*. at ¶¶ 31-32. The lien of the Second Mortgage, however, obviously survived their chapter 7 discharge. *See* 11 U.S.C. § 524(a); *Johnson v. Home State Bank*, 501 U.S. 78 (1991).

Thereafter, according to the loan documents submitted in connection with the Rule 56 Motion, Popular ABS, Inc. endorsed the Note in blank. *See* Amended Complaint, at Exh. A (the Note). James Fratangelo, who serves as the manager of each of the Defendants, testified that Avail Holding, LLC ("Avail") currently has possession of the Note, after its sister company, BLB Trading, LLC, took delivery of the Note (and assignment of the Second Mortgage) sometime in 2009. Mr. Fratangelo testified that BLB Trading, LLC was the purchaser in a sale of multiple loans from an entity he recalled was either "Banco Popular, or I think it might be Popular Financial Services." *See* Transcript of Deposition of James Fratangelo held Nov. 1, 2021 (hereinafter "Dep. Tr.") at 9:19-20; Affidavit of Avail Holding LLC [sic] dated Oct. 13, 2021 (Rule 56 Motion at Exh. 6).[1]

---

[1] According to the Corporate Assignment of Mortgage dated Sept. 9, 2009, and recorded Jan. 15, 2019 (Rule 56 Motion as Exh. 3), MERS (the nominee for the original lender and successors) assigned the Second Mortgage (and purportedly the Note) to BLB Trading, LLC using a form prepared by Popular Mortgage Servicing, Inc. BLB Trading, LLC thereafter recorded a corrected assignment from itself to Avail Holding, LLC.

Sometime in 2019, roughly ten years after succeeding to the Note and Second Mortgage, the Defendants contacted the Plaintiffs seeking payment.  To avoid losing their home through foreclosure and enforcement of Avail's *in rem* property rights, the parties entered into a loan modification agreement (the "Loan Modification Agreement"), reducing the interest rate on the Note from 11.25% to 8% and reducing the unpaid balance owed, including all unpaid advances, interest, and late fees from $107,299.47 to $75,000.00. (Amended Complaint, ECF No. 15, Exhibit E, pp. 2-3).  Although they now challenge the Loan Modification Agreement as vulnerable to rescission based on alleged misrepresentations regarding Avail's ownership of the Note, at the time they entered into the modification they acknowledged that Avail was "the legal holder and the owner of the Loan Documents . . ." *Id.*

With respect to the Plaintiffs' default, Avail agreed in the Loan Modification Agreement to stop the foreclosure, extend the maturity date of the note to August 28, 2024, and bring the mortgage current. *Id.*  The Loan Modification Agreement excused the default that otherwise would have resulted in Avail's foreclosure of the Plaintiffs' interest in their residence, albeit subject to the senior lien.

Evidently unable to meet their financial obligations, the Plaintiffs filed a voluntary petition for relief under chapter 13 on June 10, 2021, and confirmation of their plan remains pending.  On September 8, 2021, almost three months after filing their bankruptcy petition, they filed a complaint to rescind the Loan Modification Agreement, determine that the Defendants have no claim in the bankruptcy case, stop them from enforcing the Second Mortgage, and recover damages on several common law and statutory theories.

Instead of an answer, the Defendants filed a Motion to Dismiss Complaint Seeking Damages in a Core Adversary Proceeding ("First Motion to Dismiss," ECF No. 10) under Fed. R.

Civ. P. 12(b).[2]  On the date and time set for the hearing on the First Motion to Dismiss, and after discussing the matter with counsel on the record and in chambers, the court adjourned the hearing to give the Plaintiffs an opportunity to amend their complaint, which they did on December 13, 2021 (ECF No. 15).  In response to the Amended Complaint, and again without answering, the Defendants promptly filed the Rule 56 Motion and the Rule 26(c) Motion which are the subject of this Memorandum of Decision and Order.[3]

More specifically, in their seven-count Amended Complaint, the Plaintiffs allege "on information and belief" that the Defendants do not possess the original Note, and have no interest in the Second Mortgage.  Plaintiffs challenge the assignments and contend that, in seeking to enforce the Second Mortgage and negotiating the Loan Modification Agreement, the Defendants misrepresented their right to payment from the Plaintiffs' property.  Consequently, the Plaintiffs say, the Defendants have no right to payment, are subject to liability (under common law and statutory theories) and, due to the Defendants' delay in recording the assignments and asserting any rights under the Second Mortgage, should be estopped from enforcing any lien.  As additional relief, Plaintiffs ask for an order rescinding the Loan Modification Agreement, which, according to their counsel during oral argument, would permit them to argue that the original interest rate (11.25% before being reduced to 8% in the now challenged modification transaction) is usurious.

In their Rule 56 Motion, the Defendants contend that the Plaintiffs have failed to raise a genuine issue of material fact regarding their possession of the Note or rights to enforce the Second

---

[2] The court will refer to any Federal Rule of Bankruptcy Procedure or Federal Rule of Civil Procedure simply as "Rule ___," relying on the numbering convention for each set of rules to signal the intended reference.

[3] At the hearing on the latest motions, Mr. Cotner feigned surprise that the court was treating the Rule 56 Motion under Rule 56 rather than Rule 12, suggesting that he "misread" the Scheduling Order dated January 21, 2022 (ECF No. 21), evidently in the hope of saving his Amended Complaint under the more liberal standards governing Rule 12 motions.  The Scheduling Order, however, could not have been clearer, and it specifically admonished counsel to comply strictly with Rule 56(d).  Moreover, in the response he prepared, Mr. Cotner himself cited Rule 56(d) and case law explaining that rule's role in the summary judgment procedure.

Mortgage.  They also contend that the Plaintiffs have failed to state a claim based on the supposed fraudulent or innocent misrepresentation with particularity.  According to the Defendants, the Plaintiffs fail to identify the speaker who made the alleged misrepresentations (or even which of the Defendants), as well as exactly what they misrepresented or when they did so.  *See* Fed. R. Civ. P. 9(b) (applicable per Fed. R. Bankr. P. 7009 and requiring a plaintiff to state the circumstances of alleged fraud with particularity).

For similar reasons, essentially because they claim there is no genuine dispute about their ownership and possession of the Note, the Defendants argue that there is no basis to rescind the Loan Modification Agreement, and that the violations alleged under the Fair Debt Collection Practices Act and the Michigan Collections Practices Act also must fail.

In addition, the Defendants assert that the Plaintiffs have also failed to state a claim for usury or laches.  As to the latter, the Defendants claim that far from being harmed, the Plaintiffs, actually benefitted from the Loan Modification Agreement, in part because of its terms (which substantially benefited the Plaintiffs by reducing the interest rate and amount of the debt) and in part because they made only nine monthly payments in ten years.  As for any statute of limitations defense, the Defendants argue that the Plaintiffs rely on the wrong statute.

Finally, as part of their Rule 26(c) Motion, the Defendants attached the affidavit of James Fratangelo, (ECF No. 18, Exh. 2), the manager of the Defendants, whom the Plaintiffs also deposed on November 1, 2021 (Plaintiffs' Response to Rule 26(c) Motion, ECF No. 25, Exhibit A).  In his affidavit, Mr. Fratangelo states that the Defendants have possession of the original note.  (ECF No. 18, Exh. 2 ¶ 7).  He also states the same thing in the deposition, and evidently brought the original Note to the examination, according to his sworn testimony.  (ECF 25, Exh. A, 7:19-8:15).

Plaintiffs oppose the Rule 56 Motion only by arguing that under Rule 56(d) they cannot meaningfully oppose the motion before their expert, Erich Speckin, inspects and samples the document that the Defendants claim is the original Note. The Plaintiffs' proposed expert's inspection, however, prompted the Defendants to file the Rule 26(c) Motion on the grounds that the inspection is unnecessary (in view of the affidavit and deposition) and disproportionate to the needs of the case.

## ANALYSIS

### 1. Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56 (applicable here through Fed. R. Bankr. P. 7056); *McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192, 195 (6th Cir. 1996) citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The evidence and all reasonable inferences must be construed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 578 (1986); *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).

When confronting a properly supported motion for summary judgment, a non-moving party must establish that a fact of consequence to the litigation is "genuinely disputed" and must do so either by citing to materials in the record, showing that the materials cited in support of the motion do not meet the movant's burden, or that the movant "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The Plaintiffs, here the party opposing the Rule 56 Motion, must "do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Amini v. Oberlin Coll.*, 440 F.3d 350, 357 (6th Cir. 2006) (citing *Pierce v. Commonwealth*

*Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994) and *Matsushita Elec. Ind. Co.*, 475 U.S. at 586).

As courts frequently observe, "[t]he mere existence of a scintilla of evidence in support of the

plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably

find for the plaintiff." *Anderson*, 477 U.S. at 252.

As an alternative to citing the record, Rule 56(d) provides that if a nonmovant "shows by

affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its

opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain

affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R.

Civ. P. 56(d). "The burden is on the party seeking additional discovery to demonstrate why such

discovery is necessary." *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004) (citing *Wallin v.

Norman*, 317 F.3d 558, 564 (6th Cir. 2003)). A court addressing a Rule 56(d) application must

consider the factors set forth in *Doe v. City of Memphis*, 928 F.3d 481, 491 (6th Cir. 2019).

Although these factors certainly place emphasis on the time and attention devoted to discovery,

Rule 56 nevertheless authorizes early motion practice in an appropriate case: "[u]nless a different

time is set by local rule or the court orders otherwise, a party may file a motion for summary

judgment *at any time* until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b) (emphasis

added).[4]

In the Scheduling Order, the court anticipated that Rule 56(d) might play a role in

connection with the Defendants' Rule 56 Motion, given that the Plaintiffs have only had a chance

to depose Mr. Fratangelo so far. *See, supra*, at n. 3. Here, with the exception of the affidavit of

Mark Hamming that seeks to raise an issue of fact regarding the amount of the debt, the Plaintiffs'

opposition to the summary judgment rests almost entirely on their purported need to verify the

---

[4] Rule 7056 imposes an additional limitation in adversary proceedings not relevant here to ensure filing of summary judgment motions in advance of related evidentiary hearings.

authenticity of the Note that Mr. Fratangelo testified is in the Defendants' possession.  Plaintiffs

offered no other specific reason for any inability to present facts essential to their case.  Under the

circumstances, and while acknowledging the case is in its infancy, the second factor mentioned in

*Doe v. City of Memphis* -- whether the desired discovery would affect the ruling -- takes on special

significance here.

When the court pressed Plaintiffs' counsel at the hearing to articulate the need for a forensic

inspection of the Note, Plaintiffs' counsel could offer only opposing counsel's statement during

that same hearing that the Defendants run a "small shop," plus his hunch or feeling that somehow

Mr. Fratangelo was not credible when he "flashed" what he represented to be the original Note

during the deposition conducted remotely by Zoom.[5]  As to the scale of the Defendants' business

operations, the court perceives in the observation no factual basis for challenging the Defendants'

ownership of the Note.

As for Mr. Cotner's professed concerns about Mr. Fratangelo's credibility, these concerns

-- which are inadequate to oppose a properly supported summary judgment motion[6] -- are similarly

insufficient under Rule 56(d).  A serious litigant cannot get relief under Rule 56(d) by proposing

a fishing expedition, certainly not without offering a description of the fish to be caught.

With respect to the supposed challenge to the authenticity of the Note that Mr. Fratangelo

swears is the original and within Avail's possession, the court is not persuaded that the fact of

---

[5] The deposition transcript does not corroborate Mr. Cotner's characterization of the display as flashing the document, as the record shows a page-by-page presentation to Mr. Cotner by Mr. Fratangelo, albeit remotely, with Mr. Cotner asking to mark his own copy of the Note as Exhibit A following the remote comparison.  *See* Dep. Tr. at 7:21-8:14.
[6] *Fogerty v. MGM Grp. Holdings Corp.*, 379 F.3d 348, 353–54 (6th Cir. 2004) (citing *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("[A] nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part upon credibility considerations…"); *Curl v. Int'l Bus. Machs. Corp.*, 517 F.2d 212, 214 (5th Cir. 1975) ("opposing party may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof").

possession is material under applicable state law, even if, ignoring the record, the court regarded the dispute as genuine (it does not).

Under Michigan law, as cogently explained by the Michigan Court of Appeals, "[a] mortgagee may foreclose on a mortgage without producing the note secured by the mortgage," provided the mortgagor has granted the power of sale and the mortgagee offers "'clear proof' of the debtor's default and continuing debt obligation to the mortgagee." *Sallie v. Fifth Third Bank,* 824 N.W.2d 238, 240 (Mich. App. 2012). In support of the Rule 56 Motion, the Defendants proffered an affidavit and deposition transcript in which Mr. Fratangelo, under oath, describes the circumstances supporting Avail's ownership of the Note (e.g., the 2009 purchase of the debt), as well as the Plaintiffs' default. The record also includes unchallenged copies of the recorded Second Mortgage and assignment documents.

Moreover, and quite tellingly, the Plaintiffs never allege that they have satisfied their obligations under the Note, or that they did not sign it or the Second Mortgage, or anything of the sort. Instead, in trying to exploit the fact that no one came forward to collect the Note (or enforce the Second Mortgage) for nearly ten years, they actually support the Defendants' case, rather than undermine it: the fact that Avail is the *only* entity seeking to collect the debt in more than a decade supports Avail's claim to the Note.[7]

Against the Defendants' showing in support of the Rule 56 Motion regarding their ownership of the Note and right to enforce the Second Mortgage, the Plaintiffs offer only counsel's doubts about Mr. Fratangelo's credibility, without any specific reference to the record to support those doubts -- doubts that the court would characterize, most charitably, as "metaphysical."

---

[7] Perhaps if there were evidence from the Plaintiffs that more than one entity was asserting ownership of the Note, the court might find a need for a forensic inspection of the document, but this case does not present the issue of duplicate liability to which the *Sallie* court referred in recognizing that the possession of an original note is not a prerequisite to foreclosure under Michigan law. *Sallie*, 824 N.W.2d at 240.

*Matsushita Elec. Ind. Co.*, 475 U.S. at 586.  As the Sixth Circuit and others have observed, generalized concerns about credibility, without a factual basis in the record, cannot defeat a properly supported summary judgment motion, such as the Rule 56 Motion in this case.  *See, supra*, n. 6.

Having concluded that there is no genuine issue of material fact regarding Avail's right to enforce the Second Mortgage, the rest of Plaintiffs' case, largely premised on the supposed issue, falls like a house of cards.

From a careful review of the Plaintiffs' Amended Complaint, it appears that at least the First, Second, Third, Sixth and Seventh Claims for Relief rise or fall on the issue of whether the Defendants (or any of them) is the holder of the Note and thereby entitled to enforce the Second Mortgage.  The Plaintiffs assert these counts either to support rescission of the Loan Modification Agreement or damages under Michigan common law, the Fair Debt Collection Practices Act, or similar Michigan analog, essentially contending that the Defendants (without specifying which) misrepresented the right to collect the debt.  *See* Amended Complaint at ¶¶ 77-83 (First Claim for Relief alleging fraudulent misrepresentation regarding Defendants' ownership of the Note), ¶¶ 84-87 (Second Claim for Relief alleging innocent misrepresentation regarding Defendants' ownership of the Note), ¶¶ 107-113 (Sixth Claim for Relief under the FDCPA), ¶¶ 114-119 (Seventh Claim for relief under the Michigan Collection Practices Act).  Their Third Claim for Relief (¶¶ 88-90) seeks rescission of the Loan Modification Agreement, also on the grounds that the Defendants misrepresented their interest in the Note and Second Mortgage, and that the Plaintiffs acted equitably.  Each of these claims for relief depends on the court's agreeing with Plaintiffs that the Defendants misrepresented their interest in the Note and Second Mortgage, but the summary judgment record precludes the court from finding for the Plaintiffs on this keystone of their case.

The court will grant summary judgment dismissing the First, Second, Third, Sixth and Seventh Claims for Relief.

With respect to the Fourth Claim for relief (sounding in laches) the Defendants argued without contradiction in Plaintiffs' response or at oral argument that the Plaintiffs have not shown any prejudice from the delay.  At most, Plaintiffs' Amended Complaint says they put a new roof on their home and paid taxes.  Routine expenses of maintaining their home and paying taxes -- obligations almost certainly required to avoid default on their first mortgage and incumbent on every homeowner -- will not support an order from this court estopping the Defendants from asserting the lien of the Second Mortgage.  It is beyond cavil that delay alone will not support laches, which focuses on the effect of delay and the inequity of that effect:

> Laches differs from the statutes of limitation in that ordinarily it is not measured by the mere passage of time, *Smith v. Sprague*, 244 Mich. 577, 222 N.W. 207 (1928); *Chamski v. Wayne County Board of Auditors*, 288 Mich. 238, 284 N.W. 711 (1939); *Chesnow v. Nadell*, 330 Mich. 487, 47 N.W.2d 666 (1951). Instead, when considering whether a plaintiff is chargeable with laches, we must afford attention to prejudice occasioned by the delay. As a general rule, "[w]here the situation of neither party has changed materially, and the delay of one has not put the other in a worse condition, the defense of laches cannot * * * be recognized." *Walker v. Schultz*, 175 Mich. 280, 293, 141 N.W. 543 (1913).

*Lothian v. City of Detroit*, 324 N.W.2d 9, 14 (Mich. 1982).  The Sixth Circuit similarly holds. *McKeon Prod., Inc. v. Howard S. Leight & Assocs., Inc.*, 15 F.4th 736, 742 (6th Cir. 2021) ("Delay alone cannot warrant laches.").  Because the Plaintiffs in response to the Rule 56 Motion offered no factual support for a finding of prejudice resulting from the Defendants' delay of ten years in enforcing their rights under the Second Mortgage, the court will grant summary judgment dismissing the Fourth Claim for relief.

This leaves the Plaintiffs' Fifth Claim for Relief (Amended Complaint ¶¶ 98-106), through which they assert that the Defendants' claim is barred by the statute of limitations and discharge in

bankruptcy.  If the court rejects these arguments, the Plaintiffs seek a reduction in Defendants' claim on account of the supposedly usurious interest rate in the original Note (evidently ignoring the reduction in their interest rate under the Loan Modification Agreement that they, surprisingly, had hoped to invalidate).

As for the bankruptcy discharge, it is true (and Defendants acknowledge) that they no longer have a right to collect the Note as a personal obligation of the Plaintiffs, given the entry of their chapter 7 discharge in the earlier proceeding.  Nevertheless, as the Supreme Court held in *Johnson v. Home State Bank*, 501 U.S. 78 (1991), any *in rem* rights -- including the right to foreclose the Plaintiffs' interest in their residence -- survived the discharge.  The court, therefore, rejects the Fifth Claim for relief to the extent premised on the Plaintiffs' earlier discharge.

The fact that the discharge leaves the Defendants only with the *in rem* right to foreclose also disposes of the Plaintiffs' statute of limitations argument, which they mistakenly premise on M.C.L. § 600.5807.  The Defendants are not seeking to bring or maintain an action to recover damages or money due for breach of contract or to enforce the specific performance of a contract, or under a surety or public bond, or even on a mortgage covenant, as contemplated in that section. Instead, after the discharge, the most they can hope to do is pursue foreclosure, which (as Defendants point out) has a separate limitation and accrual provision.  *See* M.C.L. § 600.5803 ("No person shall bring or maintain any action or proceeding to foreclose a mortgage on real estate unless he commences the action or proceeding within 15 years after the mortgage becomes due or within 15 years after the last payment was made on the mortgage.").  The Second Mortgage has not become due, and the Plaintiffs' Amended Complaint confirms that they made payments on account of the mortgage after entering into the Loan Modification Agreement in 2019.  Therefore, the court rejects the Fifth Claim for relief to the extent premised on the statute of limitations.

The only remaining challenge to the Defendants' position reflected in the Fifth Claim for relief is that the rate of interest under the Note (11.25%) exceeds the 7.0% prescribed in M.C.L. § 438.31 for written obligations.  First, because the court is rejecting the proposed rescission of the Loan Modification Agreement, the Plaintiffs are bound by their acknowledgment of the debt in that agreement, and the reduction of the interest rate from 11.25% to 8.00%.  Moreover, the Plaintiffs offered no argument in response to the Defendants' eminently plausible argument that the Second Mortgage is governed by the Secondary Mortgage Loan Act, M.C.L. § 493.51 et seq., which defines "secondary mortgage loan" in a way that describes the Note and Second Mortgage at issue here:

> "Secondary mortgage loan" means a loan that has a term of 90 days or more; that is made to a person for personal, family, or household purposes; and that is secured by a mortgage on an interest in real property that is used as a dwelling and is subject to a lien of 1 or more outstanding mortgages. A secondary mortgage loan may be secured by other collateral in addition to real property. Notwithstanding the place of execution, nominal or real, of a secondary mortgage loan, if the real property that secures the loan is located in this state, a secondary mortgage loan is subject to this act and all other applicable laws of this state.

M.C.L. § 493.51(p).  By failing to oppose the Rule 56 Motion on this score, the Plaintiffs have forfeited any reliance on the 7.00% rate cap prescribed in M.C.L. § 438.31, and the court finds that their secondary mortgage loan is governed, perhaps not surprisingly, by the Secondary Mortgage Loan Act and its 25.00% interest rate ceiling.  M.C.L. § 493.71 (incorporating interest rate prescribed in Credit Reform Act, M.C.L. § 445.1854(1)).

The court has reviewed Mr. Hamming's affidavit, which suggests that the Defendants have not given credit for several payments that he and his wife paid.  At the hearing, the Defendants' counsel conceded that Mr. Hamming is likely correct, although she argued that the error would not affect the total amount of the claim.  Regardless, any controversy about the application of payments

is not within the four-corners of the Amended Complaint -- Plaintiffs' second attempt at articulating a right to relief -- and the court is not inclined to include the application of payment controversy (if there is one) in this adversary proceeding which, until the Plaintiffs filed Mr. Hamming's affidavit, did not embrace the issue. *See* Amended Complaint at ¶¶ 98-106.  In making this decision, the court notes that the claims allowance process will provide the Plaintiffs with a more appropriate forum to resolve any issue regarding the application of payments, now that the larger issues are behind us.

For the foregoing reasons, the court will grant the Rule 56 Motion and direct the Clerk to enter judgment dismissing the Amended Complaint in conformance with this Memorandum of Decision and Order.

2. Protective Order

The court's decision to grant the Rule 56 Motion and enter judgment dismissing the Amended Complaint renders it unnecessary to rule on the Rule 26(c) Motion, or the Plaintiffs' belated request to supplement their brief in response (ECF No. 29).  The court will therefore deny the Rule 26(c) Motion and the request to file a supplemental brief in response as moot.

CONCLUSION AND ORDER

Except as provided above regarding the application of payments, today's decision rejects the Plaintiffs' challenge to the Defendants' *in rem* enforcement of the Note and Second Mortgage. Most of the Amended Complaint was premised on the allegation, made "on information and belief" that the Defendants hold no interest in the Note.  Although plaintiffs generally may plead on this basis, a defendant's properly supported summary judgment motion requires them to reveal the

"information" and set forth the basis for the "belief" in accordance with Rule 56(c)(1). Here, however, the Plaintiffs have completely failed to do so.

Accordingly, the court will grant the Rule 56 Motion with prejudice, provided, however, that the dismissal with be without prejudice to Plaintiffs' resort to the claims allowance process (in a manner consistent with today's Memorandum of Decision and Order) for purposes of addressing the application of payments and amount of the claim.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1.     The Rule 56 Motion is GRANTED as provided herein and the Clerk shall prepare and enter a separate judgment dismissing the Amended Complaint; and

2.     The Rule 26(c) Motion, and the request to supplement Plaintiffs' response to that motion (ECF No. 29) are DENIED as moot.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Roger G. Cotner, Esq., Elizabeth M. Abood-Carroll, Esq., Brett N. Rodgers, Esq., chapter 13 trustee, and the United States Trustee.

END OF ORDER

**IT IS SO ORDERED.**

**Dated March 3, 2022**



Scott W. Dales
United States Bankruptcy Judge